UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------  X
                                           :
**The Foundry, A Print Communications Company LLC** :
a Virginia limited liability company,      :
                                           :      11 Civ. 9553 (ALC) (KNF)
                          Plaintiff,       :
                                           :      <u>**OPINION & ORDER**</u>
             -against-                     :
                                           :
**Trade Secret Web Printing, Inc.**, a Canadian corporation, :
**and Bashir "Dave" Harb**, an individual,  X
                                           
                          Defendants.

-----------------------------------------

**ANDREW L. CARTER, JR., District Judge:**

### INTRODUCTION

Plaintiff The Foundry brings the present suit against Defendant Trade Secret Web Printing, Inc. and Bashir "Dave" Harb alleging breach of contract, tortious interference with existing business relationships, defamation, prima facie tort, and negligence. Plaintiff asserts that this Court has jurisdiction over Defendants pursuant to the federal courts' diversity jurisdiction, 28 U.S.C. § 1332. Defendants challenge the Court's personal jurisdiction and move for dismissal of the Complaint pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to dismiss the Complaint pursuant to the doctrine of forum non conveniens. Defendants also move to dismiss four of the five counts in the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). On June 7, 2012, Plaintiff moved for an order of pre-judgment attachment, for which a hearing was held on June 29, 2012.

1

For the reasons stated below, the Court denies Defendant Harb's motion to dismiss for lack of personal jurisdiction, but grants Defendants' motion to dismiss the Complaint pursuant to the doctrine of forum non conveniens. Accordingly, Plaintiff's motion for an order of pre-judgment attachment is moot.

## BACKGROUND

The following facts are taken from the Complaint unless otherwise indicated.

Plaintiff is a Virginia limited liability company named The Foundry, A Print Communications Company, LLC ("The Foundry" or "Plaintiff"). The Foundry is a global printing company that serves the printing needs of corporate, travel, hospitality, publishing, automotive, college, university, and other markets. The Foundry produces books, magazines, directories, packaging, security-printed items and other forms of media.

Defendant is a Canadian corporation located in Toronto named Trade Secret Web Printing, Inc. ("Trade Secret"). Defendant, Bashir "Dave" Harb ("Harb") is a principal of Trade Secret. Trade Secret handles printing for customers across the world, including those located in New York State.

On or about July 15, 2010, Michael Cialdella ("Cialdella"), a principal of The Foundry, emailed a request to Trade Secret in Toronto for a quote on a potential print order of 20,000 magazines to be shipped to locations in Virginia and New York. (Affidavit of Bashir Harb at ¶ 9–10, ECF #14 ("Harb's Aff.")). Pre-order discussions took place via email and telephone over the course of the next two to three months between Cialdella in Virginia and Trade Secret in Canada. (Harb's Aff at ¶ 9.) This agreement was memorialized on September 9, 2010, when The Foundry issued a print order to Trade Secret outlining the terms between the parties and all

2

of the pertinent details of the project (the "Print Order"). Pursuant to the terms of the Print Order, The Foundry agreed to pay $43,000 to Trade Secret.

The Foundry hired Trade Secret for the sole purpose of printing an order for a new client of The Foundry's, The American Academy of Hospitality Services ("AAHS"). AAHS hired The Foundry on August 1, 2010 to print a total of 20,000 magazines of the Star Diamond World publication Issue No. 6. (the "Project").[1] The Foundry viewed the Project as a tremendous opportunity to showcase its services for a new, highly-profitable customer. AAHS agreed to pay The Foundry $50,100 in order to complete the printing of the Project.

The Print Order between The Foundry and Trade Secret contained a clause prohibiting Trade Secret from soliciting The Foundry's customers (the "non-solicitation clause"). This clause provided:

> By reviewing the specifications/supplying a quote, the printer agrees NOT to contact directly or indirectly the above client without written authorization, for as long as the client above remains a Foundry account/prospect and for three years after. Under penalty of undermining The Foundry, we will hold you liable for any potential losses associated with your contact and you will be responsible for any legal fees incurred by The Foundry.

Although the Print Order (attached to the Complaint as Exhibit 2, ECF # 1-1) does not expressly mention AAHS (other than noting "Project #AH-01," which presumably refers to AAHS), The Foundry conveyed to Trade Secret the importance of the Project, and there is no indication that Trade Secret was unaware that the Project was for AAHS since Trade Secret shipped the magazines to AAHS.

Between September 9, 2010, and September 22, 2010, The Foundry attempted to communicate with Trade Secret concerning the latter's progress on the Project. Trade Secret also ignored The Foundry's requests for certain information important to successfully printing

---

[1] AAHS hired Foundry to print other materials as well, which are not relevant to resolving the instant motions.

3

the magazines. Trade Secret failed to deliver the Project by the September 22, 2010 deadline. Between September 22, 2010 and September 27, 2010, Trade Secret ignored The Foundry's repeated requests for updates on the Project's status. On September 28, 2010, Trade Secret admitted to outsourcing a portion of the Project and that Trade Secret's outside vendor had yet to begin work because that vendor's outside supplier had not been paid.

On October 1, 2010, Trade Secret shipped some, but not all, of the magazines directly to AAHS in New York. AAHS immediately contacted The Foundry to complain of numerous problems with the printing. In order to try and salvage The Foundry's business relationship with AAHS, Cialdella traveled to New York City on October 5, 2010, in order to meet with AAHS representatives and to ensure them that the problems with the magazines would be rectified. Cialdella also traveled to Trade Secret's facilities in Toronto for an explanation on the status of the Project, because Trade Secret was failing to communicate with The Foundry. The Foundry determined that the additional shipments had not shipped because Trade Secret failed to fully pay its vendor for a portion of the Project. Cialdella also paid Trade Secret's vendor for its work so that the Project could be completed. Nevertheless, Trade Secret did not deliver the full balance of the magazines until October 20, 2010, and even then, many of the publications allegedly were of poor quality or contained errors and inaccuracies. AAHS and The Foundry incurred additional costs to accommodate the new delivery deadlines, all of which Trade Secret failed to meet. Ultimately, as a result of the many errors associated with the Project, AAHS failed to pay The Foundry for its work on the Project and for subsequent work.

The Complaint also alleges that Trade Secret and Harb (collectively, "Defendants"), who had access to the names of The Foundry's various existing customers and prospects, proceeded, almost immediately and without authorization, to directly solicit these customers and prospects

4

in New York City and elsewhere. The Foundry specifically advised Defendants that they could not even contact AAHS unless Cialdella was out of the country and if The Foundry was not immediately available to communicate with AAHS. And even then, Trade Secret could only update AAHS as to the status of the Project. At some point "not long after" the failure of the Project, Trade Secret and Harb contacted AAHS, claiming that The Foundry was to blame for the problems with the Project and referred to The Foundry as "crooks," a "bad" printing company, and "other words to this effect."[2] As a result, AAHS decided to utilize the services of Trade Secret and another printing company for its printing needs. Additionally, AAHS has threatened The Foundry with legal action due to the alleged loss of revenue from advertisers who were disappointed with the quality of the publications.

The Complaint also alleges that Defendants contacted an existing customer of The Foundry, Sunny Day Guides ("Sunny Day"), and made similar statements as those made to AAHS. The Foundry enjoyed annual net revenues of $75,000 due to its relationship with Sunny Day, which consisted of printing the travel guides for various destinations, including Branson, the Smoky Mountains, Myrtle Beach, Ocean City, the Outer Banks and Colonial Williamsburg. However, as a result of the Defendants' comments, Sunny Day has refused to provide printing jobs to The Foundry.

On December 23, 2011, The Foundry sued Trade Secret and Harb in the Southern District of New York. Although Trade Secret concedes that New York has personal jurisdiction over it, Harb argues that he is not individually subject to personal jurisdiction in New York. Both defendants additionally move to dismiss all the causes of action except for breach of contract

---

[2] The Complaint accuses Trade Secret of making similar statements to other existing customers of The Foundry but admits that "the full extent of the Defendants' conduct and the impact of same has yet to be fully determined." (Compl. ¶ 27.)

5

pursuant to Fed. R. Civ. P 12(b)(6). Finally, in the alternative, defendants move to dismiss this case under the doctrine of forum non conveniens. For its part, The Foundry opposes these motions, and petitions the Court to attach defendants' assets pursuant to Fed. R. Civ. P. 64 and C.P.L.R. § 6201.

## DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2)

#### 1. Standard of Review

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, a court relies on pleadings and affidavits, rather than conducting a "full-blown evidentiary hearing," "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." Id. (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).[3] "[U]ntil such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." Marine Midland Bank, 664 F.2d at 904 (citations omitted). "Although a plaintiff's allegations are ordinarily accepted as true at the pleadings state, on a motion to dismiss for lack of jurisdiction, where 'defendant rebuts plaintiff['s] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff[] do[es] not

---

[3] When deciding a motion for lack of personal jurisdiction, courts may "consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." ESI, Inc. v. Coastal Corp., 61 F. Supp.2d 35, 50 n. 54 (S.D.N.Y. 1999) (citation omitted).

6

counter that evidence—the allegation may be deemed refuted." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp.2d 402, 420 (S.D.N.Y. 2006) (citation omitted).

2.  Relevant Law

This case is before this Court pursuant to diversity jurisdiction; therefore, the Court will look to New York law to determine whether defendant Harb is subject to personal jurisdiction here. See Bank Brussels, 305 F.3d at 124. The Court must consider: (1) whether New York law would confer jurisdiction by New York courts over defendant Harb and (2) whether the exercise of jurisdiction over him comports with the Due Process Clause of the Fourteenth Amendment. Id.

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to C.P.L.R. § 301 and (2) long-arm jurisdiction pursuant to C.P.L.R. § 302.

i.  *C.P.L.R. § 301*

Under C.P.L.R. § 301, a New York court may exercise jurisdiction over a non-domiciliary defendant "on causes of action wholly unrelated to acts done in New York," when the defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction.'" Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990) (quoting Simonson v. Int'l Bank, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964)). A corporation is "doing business," and is therefore "present" in New York and subject to personal jurisdiction, with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and

7

continuity." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

Here, none of the indicia of "doing business" is present to confer general personal jurisdiction for the individual defendant Harb. As Harb's affidavit sets forth, he does not reside in New York; maintain offices, addresses, phone numbers, or bank accounts in New York; does not own property in New York; and does not conduct any business personally in New York. Plaintiff offers no facts to support a finding that Harb is "doing business" in New York, and therefore has not made out a prima facie showing of general personal jurisdiction over Harb. Accordingly, the Court finds that New York does not have general personal jurisdiction over him pursuant to C.P.L.R. § 301.

*ii.  C.P.L.R. § 302*

C.P.L.R. § 302(a)(1) provides, in relevant part: "[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or though an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1) (McKinney's 2012). In addition to finding that the defendant has transacted business within the state or contracted anywhere to supply goods or services within the state, "the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citing McGowan v. Smith, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). This provision permits jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoke[ed] the benefits and protections of its laws.'" Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 17,

308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)). "A defendant may not be subject to jurisdiction based on 'random,' 'fortuitous,' or 'attenuated contacts.'" Avecmedia, Inc. v. Gottschalk, No. 03-cv-7831 (BSJ), 2004 WL 1586411, at *4 (S.D.N.Y. July 14, 2004) (citing Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)). "The contacts must provide a fair warning to defendant of the possibility of being haled into court in the forum state." Id. (citations omitted). A substantial relationship is one that is "direct," Jacobs v. Felix Bloch, 160 F. Supp.2d 722, 739 (S.D.N.Y. 2001), and not "too attenuated," Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 66 (2d Cir. 2012) (quoting Johnson v. Ward, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (2005)).

C.P.L.R. § 302(a)(1) is a "single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195 (1988) (internal quotation marks omitted); Best Van Lines, Inc. v. Walker, 490 F.3d 239, 248 (2d Cir. 2007) ("[P]roof of one transaction . . . in New York is sufficient to invoke [long-arm] jurisdiction, even though the defendant never enters New York.") (citing Deutsche Bank v. Montana Bd. of Investments, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164 (2006)). Although "[t]he mere existence of defendant's telephone calls into New York are not sufficient to sustain New York long arm jurisdiction," when "the purpose of the calls is for the defendant to actively participate in business in New York, then they alone may support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1)." Carlson v. Cuevas, 932 F. Supp. 76, 78 (S.D.N.Y. 1996) (citing Parke-Bernet, 26 N.Y.2d at 17–18). Put another way, a single communication may be considered a "business transaction" where it was "related to some transaction that had its

9

center of gravity inside New York, into which a defendant projected himself." Three Five Compounds, Inc. v. Scram Technologies, Inc., No. 11-cv-1616 (RJH), 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011) (quoting Maranga v. Vira, 386 F.Supp.2d 299, 306 (S.D.N.Y. 2005)).

Here, the Complaint alleges that at some time after the magazines were shipped to AAHS, Harb made a telephone call to AAHS to blame The Foundry for the poor quality of the magazines. Also during this call, Harb allegedly successfully solicited AAHS as a client for future business. This telephone call was "related to" The Foundry's prior business transaction with AAHS—which "had its center of gravity inside New York"—and the call "projected" Harb and Trade Secret into future transactions with AAHS having their "center of gravity inside New York." See Three Five Compounds, 2011 WL 5838697, at *7 (quoting Maranga, 386 F.Supp.2d at 306). Moreover, The Foundry's claim for tortious interference with business relationships arose directly from this phone call, such that Harb had "fair warning . . . of the possibility of being haled into court" in New York. See Avecmedia, 2004 WL 1586411, at *4 (citing Burger King, 471 U.S. at 475. Accordingly, § 302(a)(1) confers personal jurisdiction over defendant Harb.

*iii. Due Process*

To satisfy the minimum contacts required by the Due Process Clause of the Fourteenth Amendment, the defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980). A nonresident defendant has minimum contacts with the forum state if he or she commits "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78

10

S.Ct. 1228 (1958). Moreover, a defendant's contacts with the forum must be "continuous and systematic," or the suit must arise out of or be related to those contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868 (1984).

"Ordinarily . . . if jurisdiction is proper under the C.P.L.R., due process will be satisfied because C.P.L.R. § 302 does not reach as far as the constitution permits." Newbro v. Freed, 337 F. Supp.2d 428, 434 (S.D.N.Y. 2004) (quoting Topps Co. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 90 (S.D.N.Y. 1997)). "At bottom, the limitations on exertion of personal jurisdiction, as reflected in Section 302(a)(1)'s requirement of purposeful activity, exist to satisfy constitutional requirements of due process." Id. (quotation omitted). As noted above, Harb allegedly called AAHS in New York to disparage The Foundry and to solicit future business with AAHS, and the cause of action for tortious interference with existing business relationships arises out of this phone call. Thus, Harb "purposefully availed [himself] of the privilege of conducting business in New York and therefore [he] could reasonably anticipate being haled into court in this forum." World-Wide Vokswagen, 444 U.S. at 297. Accordingly, the application of C.P.L.R. § 301(a)(1) to Harb in this case does not offend Due Process.

**B.    Motion to Dismiss for Forum Non Conveniens**

Under the common law doctrine of forum non conveniens, a district court has broad discretion to "dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). The Second Circuit has "outlined a three-step process to guide the exercise of that discretion":

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc)).

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice for forum will stand." In re Optimal U.S. Litig., 837 F. Supp.2d 244, 251 (S.D.N.Y. 2011) (quoting Iragorri, 274 F.3d at 71). "However, 'the degree of deference given to a plaintiff's forum choice varies with the circumstances,'" id. (quoting Iragorri, 274 F.3d at 71), and "the greatest deference is [usually] afforded a plaintiff's choice of home forum." Norex Petroleum, 416 F.3d at 153 (citing Iragorri, 274 F.3d at 71). "In assessing the proper measure of deference," courts look to several factors, including, "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district," and whether plaintiff's choice was motivated by tactical forum shopping. In re Optimal, 837 F. Supp. 2d at 250–51. Ultimately, "the greater the plaintiff's or the lawsuit's bona fine connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be to gain dismissal whereas the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons the less deference the plaintiff's choice commands." Id. (quoting Palacios v. Coca-Cola Co., 757 F. Supp.2d 347, 352 (S.D.N.Y. 2010)) (quotation marks and ellipses omitted).

With regard to step two, "[t]he defendant bears the burden of establishing that a presently available and adequate alternative forum exists." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009). "[A] forum may . . . be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a

12

remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all." Id. Although the ultimate burden rests with the defendant, courts will not "adversely judg[e] the quality of a foreign justice system," unless the plaintiff, for example, "produc[es] evidence of corruption, delay or lack of due process in the foreign forum." Id. (citing PT United Can Co., 138 F.3d at 73). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003). "Moreover, '[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies.'" In re Optimal, 837 F. Supp. 2d at 251 (quoting Norex Petroleum, 416 F.3d at 158).

At step three, the "burden is on the defendant to show 'the balance of private and public interest factors tilts heavily in favor of the alternative forum.'" Id. at 252 (quoting Abdullahi, 562 F.3d at 189). The private interest factors include: "(1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." Id. These factors help the court balance "the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal" and having to bring suit in another jurisdiction. Id. (quoting Iragorri, 274 F.3d at 74).

The public interest factors include: "(1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; (3) avoiding the burden on jurors by having them decide cases that no impact on their community." Id. No single factor is dispositive, and "each case turns on its facts." Piper Aircraft v. Reyno, 454 U.S. 235, 249, 102 S.Ct. 252 (1981). "In sum, '[t]he action should be dismissed only if the forum is shown to be genuinely

13

inconvenient and the selected forum significantly preferable." Id. (quoting Iragorri, 274 F.3d at 74–75).

1.   Level of Deference Afforded to Plaintiff's Choice

Plaintiff's choice of forum here is accorded a moderate level of deference. First, the "convenience of the plaintiff's residence in relation to the chosen forum" weighs against according deference to The Foundry's choice of forum. The Foundry is a company headquartered in Virginia, and it admits that New York is not a convenient forum for either party. (Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") at 20 n. 7.)[4] The Foundry's employees who negotiated the Print Order between it and Trade Secret are presumably located in Virginia, and the Print Order specified that Virginia law would apply to any disputes arising out of it. Because New York is not a convenient location for the Plaintiff to bring suit, this factor weighs against according Plaintiff's choice of forum deference.

Second, "the availability of witnesses or evidence to the forum district" does not strongly weigh in favor of deferring to Plaintiff's choice of forum. Plaintiff claims that it "filed its lawsuit in New York City because it is the location of the majority of activities and witnesses associated with all aspects of this dispute." (Opp. at 20 n.7.) Plaintiff points to the facts that: (1) AAHS is a New York City publisher; (2) the proofs and publications related to the Project were shipped to New York City, "where some of those publications remain"; (3) Plaintiff attended meetings with AAHS in New York City that were "relevant to the Project"; and (4) Defendants solicited many of the Plaintiff's customers and prospects located in New York City and throughout the United States. (Opp. at 19.) In arguing that "the majority of activities and

---

[4] In the Complaint, The Foundry alleges that it "is a global printing company located in Virginia, Florida, New York, and other locations." (Compl. ¶ 15.) However, at no point in its Opposition to Defendants' motion to dismiss for forum non conveniens did The Foundry claim that it was "located" in New York or that New York was a convenient forum. In fact, as noted above, The Foundry concedes that New York is an inconvenient forum.

14

witnesses associated with all aspects of this dispute," Plaintiff emphasizes the tort allegations against Trade Secret involving AAHS but ignores its breach of contract claim against Trade Secret, whose witnesses are all located in Canada. Plaintiff also downplays the tort allegations against Defendants involving Sunny Day, a vendor presumably located in Virginia with whom Plaintiff had an existing relationship worth $75,000 in annual net revenues, and who, allegedly as a result of Defendants' comments, has now refused to work with Plaintiff.[5] Moreover, that "some" of the allegedly defective publications remain in New York City does not mean that relevant evidence to the dispute is available in New York to the exclusion of other fora. To the extent it is necessary, surely these materials could be shipped to either Virginia or Toronto. Furthermore, that Plaintiff attended meetings with AAHS (but not with Trade Secret) in New York City is not relevant to the availability of witnesses or evidence in New York. Finally, unlike the allegations involving AAHS or Sunny Day, the claim that "Defendants have directly or indirectly . . . contacted additional existing customers of The Foundry" (only a couple of which are located in New York) is conclusory and need not be given much weight. (Compl. ¶ 27.) In short, while the Court does not doubt that witnesses from AAHS are important to The Foundry in settling this dispute, AAHS is not the only entity relevant to the forum non conveniens analysis. Accordingly, this second factor does not strongly weigh in favor of deferring to Plaintiff's choice of forum.

The third factor, "the defendant's amenability to the suit in the forum district," weighs in favor of according deference to Plaintiff's choice of forum, but not by much. Trade Secret concedes that it is subject to personal jurisdiction in New York, although the basis for this is not made clear by the parties. And, as discussed above in Part. A, supra, New York courts do have

---

[5] A quick look at Sunny Day's website, www.sunnydayguide.com, to which Plaintiff refers in the Complaint, indicates that Sunny Day is in fact located in Virginia Beach, Virginia.

personal jurisdiction over defendant Harb based on his single phone call he made into New York. Jurisdiction based on a single allegedly tortious phone call is arguably at the outer reach of New York's long-arm statute. Thus, Harb was not clearly amenable to suit in New York when the Complaint was filed, whereas both Harb and Trade Secret were clearly amenable to suit in Canada or Virginia. Compare Norex Petroleum, 416 F.3d at 155 (noting that New York was a convenient, not tactical, choice of forum, where it was doubtful that plaintiff could have perfected jurisdiction over all defendants in any of the "presumptively convenient home forums" or "even in defendants' preferred forum"). As such, this is not the case where a plaintiff's choice of forum is "made to obtain jurisdiction over defendant," Norex Petroleum, 416 F.3d at 156 (quoting Iragorri, 329 F.3d at 74), which cuts against a finding of deference on this factor.

Fourth, courts must ask whether the plaintiff's choice of forum was motivated by tactical reasons. In light of the other deference factors above, and given that Virginia public policy generally disfavors non-solicitation clauses[6] and that no cause of action for prima facie tort exists in Virginia,[7] an inference that Plaintiff's choice of New York was motivated by forum shopping considerations is not far-fetched. However, since there is no real evidence that Plaintiff was motivated to choose New York to take advantage of local laws, and the location of AAHS is sufficiently germane to the dispute, the Court does not find that Plaintiff engaged in forum shopping.

In sum, Plaintiff is afforded a moderate level of deference because the lawsuit does have a bona fide connection to New York, but New York is not particularly convenient for Plaintiff, Defendants, or the majority of available witnesses.

---

[6] See Phoenix Renovation Corp. v. Rodriguez, 439 F. Supp.2d 510, 522 (E.D. Va. 2006).

[7] See Unlimited Screw Products, Inc. v. Malm, 781 F. Supp. 1121, 1130 (E.D. Va. 1991).

16

2.  Adequacy of Alternative Fora

Canada and Virginia are adequate fora. Plaintiff spends much of its opposition to Defendants' forum non conveniens motion arguing that Defendants failed to demonstrate that a Canadian court would be an adequate alternative forum. (Opp. at 17–18.) The Court disagrees. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding, 329 F.3d at 75. Here, both Trade Secret and Harb are amenable to service of process in Canada, and Canada can provide an adequate forum for The Foundry's claims sounding in contract and tort. Plaintiff does not contend otherwise.

3.  Private and Public Factors

a. *Private Interests*

First, the "relative ease of access to evidence" does not weigh significantly in either direction. To the extent there is evidence regarding the negotiation and execution of the Print Order, this evidence will likely be in Canada or Virginia. Assuming that the samples of the allegedly defective magazines are currently in New York, these can easily be shipped to Canada or Virginia.

Second, the "cost to transport witnesses to trial" weighs slightly in Defendants' favor. Trade Secret will have to fly its witnesses from Canada to New York, but given that Trade Secret conducts other business in New York and has conceded to personal jurisdiction here, "any inconvenience caused by travel to New York for this litigation will not be oppressive." In re Optimal, 837 F. Supp. 2d at 258. Moreover, while AAHS representatives would not have to travel to testify if the case remained in New York, presumably Sunny Day representatives would.

17

Regardless, the Court does not find the cost to transport witness to have much bearing on this analysis.

Third, the "availability of compulsory process for unwilling witnesses" also does not weigh significantly in either direction. Aside from broadly stating that "requiring the various willing (and unwilling) U.S. witnesses involved to travel to Canada would be unnecessarily expensive, procedurally difficult and time-consuming," (Opp. at 20), Plaintiff does not specify which witnesses are unwilling and why travel would be procedurally difficult.

In sum, the private interest factors do not weigh heavily in either direction.

b. *Public Interests*

First, the fora's relative interests weigh in favor of dismissal. Despite Plaintiff's contentions to the contrary, New York does not have a strong interest in this particular lawsuit. Plaintiff argues that "the large majority of the material activities or a substantial portion therefore occurred in New York and/or the causes of action accrued in New York." (Opp. at 18.) However, as noted above, Plaintiff emphasizes only the allegations involving AAHS and downplays everything else, including the events surrounding the Print Order and the communications to Sunny Day. New York does not have a strong interest in settling contract disputes between a company in Virginia and one in Canada. Nor does New York have a strong interest in holding a Canadian company liable for allegedly harming a Virginia company. New York does, however, have an interest in "avoiding the burden on [its] jurors by having them decide cases that have no impact on their community." Maersk, 554 F. Supp.2d at 454. Second, the interest in "avoiding the difficulties of applying foreign law" weighs in favor of dismissal. The Print Order specifies that Virginia law applies to disputes arising out of it, and it is far from

18

certain that New York law would apply to the torts alleged in this case.[8] In sum, the public interests in this case do not favor maintaining this suit in New York.

Considering the moderate level of deference afforded Plaintiff's choice of forum, that Canada and Virginia are both adequate alternative fora, and that New York has no real interest in this litigation, Defendants have sufficiently shown that a balance of the hardships in this case favors dismissal. Accordingly, this action is dismissed for forum non conveniens. The Court need not address Defendants' motion to dismiss for failure to state a claim or Plaintiff's petition for pre-judgment attachment.

## CONCLUSION

Based on the above, the Defendants' motion to dismiss the Complaint for forum non conveniens is GRANTED.

SO ORDERED.

Dated:    New York, New York
          July 25, 2012

ANDREW L. CARTER, JR.
United States District Judge

---

[8] To resolve conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that "relate to the purpose of the particular law in conflict." In re Optimal, 837 F. Supp. 2d at 261 (quoting GlobalNet Financial.com v. Frank Crystal & Co., 449 F.3d 377, 384 (2d Cir.2006)).